ARNOLD *v.* KRUG.

1. Trial—Request by Both Parties for Directed Verdict—Determination by Court.

   Where, without reservations, both parties ask for directed verdict, the court may determine the case and need not submit it to the jury even though there be room for conflicting inferences from the testimony.

2. Same—Motion to Direct Verdict—Request to Charge.

   When, in addition to motion to direct a verdict, a party presents requests to charge the jury, it negatives his intent to waive the right to have the jury pass upon the case; and if his motion to direct is denied, he is entitled to go to the jury on any proper issue of fact.

3. Same—Motion to Direct Verdict—Reservation of Right to Go to Jury.

   Party who moves for directed verdict need not make reservation of right to trial by jury by written request to charge but such reservation may be made by any definite claim to the court to that end, made upon the record.

4. SAME—DIRECTED VERDICT—WAIVER OF JURY.

Where each of the parties to an action requests the court to direct a verdict in his favor, and makes no request that jury be allowed to determine any question of fact, the parties will be presumed to have waived the right to a trial by jury, and to have constituted the court a trier of questions both of law and of fact.

5. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

Where dispute between a party and the court is resolved in his favor he cannot complain of it.

6. AUTOMOBILES—THROUGH HIGHWAYS—RIGHT OF WAY—DUE CARE.

Motorist on trunkline highway has right of way but is not thereby excused from exercising precaution commensurate with reasonable prudence.

7. SAME—THROUGH HIGHWAYS—RIGHT OF WAY—STOPPING.

Right of way accorded driver on through highway is more than mere privilege of going through the intersection in advance of a car which reaches it at the same time, but, since drivers approaching trunkline are required to stop before entering intersection whether anyone is at or near the crossing or in sight on the trunkline, driver thereon is entitled to assume that those approaching it will obey the law and stop, hence he is not obliged to have his car under such control at each intersection that he may stop at once and avoid collision with persons who may illegally come into his path.

8. NEGLIGENCE—PLEADING—EVIDENCE.

A driver cannot be convicted of negligence on a general charge that he did not exercise the care a prudent person would have used under the circumstances but it is necessary to prove the specific act he did or did not do.

9. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—THROUGH HIGHWAYS —STOPPING—PROXIMATE CAUSE.

Truck driver *held*, not guilty of negligence as a matter of fact or law where he drove his truck easterly on right side of through trunkline highway at speed of 45 miles an hour up to within 20 to 25 feet of car in which plaintiff's decedent, a minor, was a passenger, and which darted out from behind embankment near corner of infrequently traveled cross road from south at speed of 15 miles an hour without having stopped and turned left at left of center of intersection in front of

defendant's truck and decedent's driver failed to look, negligence of decedent's driver and not failure of defendant's driver to anticipate such extraordinary conditions being the proximate cause of the collision.

Appeal from Tuscola; Cramton (Louis C.), J. Submitted April 14, 1937. (Docket No. 85, Calendar No. 39,249.) Decided May 21, 1937. Rehearing denied June 29, 1937.

Case by Albert Arnold, administrator of the estate of Alice Arnold, deceased, against Donald Krug for fatal injuries to plaintiff's decedent received in an automobile collision at intersection of a trunkline highway and cross road. Directed verdict and judgment for plaintiff. Defendant appeals. Reversed and judgment ordered entered for defendant.

*Maurice C. Ransford,* for plaintiff.

*Orr & Orr (Otto, Holland & Otto,* of counsel), for defendant.

FEAD, C. J. M–81 is a State trunkline paved highway running east and west. Near Cass City it is intersected by a north and south highway, called Cemetery road. South of the intersection, Cemetery road is very little traveled, is rough, with grass growing between the wheel tracks, and runs about 80 rods to a blind end. A man who traveled the road for years, sometimes every other day, to care for stock, said he had seen only one vehicle on it in his life and that was during the dry summer season.

On the west side of Cemetery road and close to the intersection is a high embankment, so travelers approaching from the south and the west cannot see each other until within 30 or 35 feet of the center of the intersection.

October 15, 1935, Alice Arnold, about 17 years old, was riding in a car driven by Leslie Doerr. They drove south on Cemetery Road, turned around, came back, and when they reached the intersection Doerr did not stop or look to the left, but ran into the intersection at 15 miles per hour, and made so short a turn to the left that he was struck by defendant's truck when his car was west of the center line and only his front wheels on or north of the center.

Wallace, driving defendant's truck, was familiar with the intersection. He approached it from the west at 45 miles per hour, did not slacken speed, did not see the Doerr car until it darted out upon the pavement, applied his brakes when 20 to 25 feet from the Doerr car, and swung to the left to avoid it but struck the car on the left side between the wheels.

Alice Arnold was injured, lived in a partially paralyzed and semi-conscious condition for about a month, and died from the injuries. Defendant appeals from judgment for plaintiff.

At the conclusion of the proofs, both parties moved for directed verdict. The court thereupon found that Wallace was not guilty of negligence in turning his truck to the left because that act was done in an emergency, but that he was guilty of negligence in failing to slacken his speed as he approached the crossing.

The practice upon requests by both parties for directed verdict does not seem to be entirely clear to the profession and we take this opportunity to state it.

Where, without reservations, both parties ask for directed verdict, the court may determine the case and need not submit it to the jury even though there be room for conflicting inferences from the testi-

mony. *Culligan* v. *Alpern,* 160 Mich. 241; *Germain* v. *Loud,* 189 Mich. 38; *Kyselka* v. *Northern Assurance Co. of Michigan,* 194 Mich. 430; *City National Bank* v. *Price's Estate,* 225 Mich. 200; *Sterling Cork & Seal Co.* v. *Ph. Kling Brewing Co.,* 228 Mich. 566; *Peoples Savings Bank of Saginaw* v. *Railway Co.,* 235 Mich. 399.

When, in addition to his motion to direct, a party presents requests to charge the jury, it negatives his intent to waive the right to have a jury pass upon the case; and if his motion to direct is denied, he is entitled to go to the jury on any proper issue of fact. *Kane* v. *Detroit Life Ins. Co.,* 204 Mich. 357; *Burkheiser* v. *City of Detroit,* 270 Mich. 381.

It follows also that one may reserve his right to go to the jury, on denial of his motion to direct, by any definite claim to the court to that end, made upon the record. The reservation need not be by written request to charge.

Possibly some of the confusion may have been caused by the original acceptance of the rule by this court without discussion of its extent and underlying principle. To clarify the situation, we adopt the statement in 18 A. L. R. 1433 and 69 A. L. R. 634, which is sustained by the weight of authority, as follows:

"Where each of the parties to an action requests the court to direct a verdict in his favor, and makes no request that the jury shall be allowed to determine any question of fact, the parties will be presumed to have waived the right to a trial by jury, and to have constituted the court a trier of questions both of law and of fact."

There is a dispute between defendant and the court as to whether the former proffered a request to charge on the subject of emergency. But as the

court held the point in defendant's favor he cannot complain of it.

The case, therefore, is presented upon the issue whether the court erred in finding defendant guilty of negligence as a matter of law or of fact and law.

Defendant, being on a trunkline highway, had the right of way. This did not excuse him from exercising care. But, as was said by Mr. Justice WIEST in *Kerns* v. *Lewis,* 246 Mich. 423, and repeated in many subsequent cases:

"While the law accords the right of way, it requires, as well, the exercise of at least 'horse sense.' The statute does not authorize one, in approaching a highway crossing, to assume that in all events he may proceed without looking, or, if unable to see, without exercising precaution commensurate with reasonable prudence."

The statement of the rule does not settle the difficulty. "Precaution commensurate with reasonable prudence" depends upon facts, and the facts are different in each case.

The right of way accorded to a driver upon a trunkline highway is something more than the privilege of going through the intersection in advance of a car which reaches it at the same time. Drivers approaching the trunkline are required to stop before entering the intersection whether anyone is at or near the crossing or in sight on the trunk highway. It is an improved road — usually hard surfaced. Its purpose is to afford rapid transit. The driver is entitled to assume that those approaching it will obey the law and stop. He is not obliged to have his car under such control at each intersecting road that he may stop at once and avoid collision with persons who may illegally come into his path.

On the other hand, he must keep such look-out ahead and to the sides and down intersecting highways as a reasonably prudent person would do in order to discover possible danger and must act carefully upon the existing conditions.

A driver cannot be convicted of negligence on a general charge that he did not exercise the care a prudent person would have used under the circumstances. It is necessary to charge and prove the specific act he did or did not do. Wallace was driving on the right side of the road at a very reasonable rate of speed and with his truck under control. The only claim of fault which could be made against him, and which the court found, is that he failed to reduce his speed as he neared the intersection. But to what rate should he have reduced the speed? It is evident that, to have avoided the collision, he would have had to so slacken his speed that he could have stopped well within 30 feet. To impose such a duty on drivers upon trunkline highways would seriously impair their purpose, be foreign to the general conception of careful drivers of their rights and duties upon them, in large measure destroy the preferential right of way, and offer inducement to drivers approaching on intersection roads to violate their legal duties. It is not the rule as a matter of law.

Nor as a matter of fact was such duty to slacken speed imposed on Wallace. He was obliged to anticipate such possible danger in the intersection and do such acts to avoid it as a reasonably prudent person would have anticipated and done, if such person had the knowledge of the situation which Wallace possessed and had the right to assume that one about to enter the trunk highway at the intersection would perform his legal duty to stop and look for traffic.

It is hardly reasonable to say that a prudent person, driving on a through highway and familiar with the conditions, would have anticipated such progressively remote possibilities as that —

(1)   A car might come from the south on the rough and infrequently traveled road, where travel is necessarily slow and the duty to stop at the through highway thereby emphasized;

(2)   Its driver would not look for approaching cars on the through highway;

(3)   He would fail to observe a very common rule of law, and of even less than ordinary care, by neglecting to stop before entering the intersection; and

(4)   To cap the climax of a total want of common prudence — he would make a short turn to the left into a part of the intersection where he had no right to be.

Reduced to its essentials, Wallace was driving at a reasonable rate of speed and without duty or reason to anticipate the possibility of such extraordinary conditions as Doerr brought about, the danger did not appear until it was too late for Wallace to avoid an accident, and the proximate cause of the collision was the negligence of Doerr and not the conduct of Wallace.

We think that, as a matter of fact and law, Wallace was not guilty of actionable negligence.

Judgment reversed and cause remanded for entry of judgment for defendant.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.