DUFFY *v.* ENRIGHT TOPHAM CO.

1. AUTOMOBILES—VIOLATION OF STATUTE AS TO LEFT-HAND TURNS—
   UNLIGHTED BICYCLES.
   Fact that 12-year old boy was riding his unlighted bicycle on
   proper side of street at an intersection at about 6:30 p. m. on
   February 5th and defendants' taxicab was violating statute
   pertaining to left-hand turns did not absolve former from duty
   of using due care to avoid injury to himself (1 Comp. Laws
   1929, § 4710).

2. TRIAL—SPECIAL QUESTIONS—INSTRUCTIONS.
   Court's statement to jury that special questions must be an-
   swered "Yes, no, so on" *held,* not erroneous as leading jury
   to believe first question must be answered, yes, and second, no.

3. SAME—INSTRUCTIONS—SPECIAL QUESTIONS—BICYCLES—LIGHTS —
   STATUTES.
   Instruction requiring jury to find under special question that
   bicyclist riding his unlighted bicycle at about 6:30 p. m. on
   February 5th did not have his bicycle legally equipped and
   lighted *held,* not error where statute expressly provides for
   lighting equipment on bicycles and use thereof after a half
   hour after sunset and at other times when light is insufficient
   (1 Comp. Laws 1929, § 4736, subds. (a), (g), as amended by
   Act No. 64, Pub. Acts 1931).

4. AUTOMOBILES—BICYCLES—CONTRIBUTORY NEGLIGENCE — INSTRUC-
   TION.
   Charge to jury that if plaintiff's minor, a bicyclist, discovered
   that motorist would not steer car to proper side of street,
   minor would not be permitted to proceed into a known and
   positive danger apparent to one of his age and intelligence
   nor continue on his course regardless of approaching danger
   without being guilty of contributory negligence barring re-
   covery *held,* clear and proper.

5. SAME—TAXICABS — WRONG SIDE OF STREET — BICYCLES — PROXI-
    MATE CAUSE.
    In guardian's suit against taxicab owner and operator for in-
        juries sustained by plaintiff's minor son where it appears
        boy's negligence, in failing to stop his bicycle after observing
        taxicab coming over to left side of street, concurred with that
        of taxicab driver continuously to moment of impact, it was a
        proximate cause of the collision and barred recovery.

6. SAME — GROSS, DISCOVERED OR SUBSEQUENT NEGLIGENCE — TAXI-
    CABS—BICYCLES.
    Doctrine of gross, discovered or subsequent negligence *held*, in-
        applicable to relieve bicyclist from consequences of his con-
        tributory negligence, where he continued on his way after ob-
        serving taxicab on wrong side of street near intersection and
        knew collision would be inevitable unless he stopped or taxicab
        returned to proper side of street.

Appeal from Saginaw; Browne (Clarence M.), J.
Submitted October 7, 1937. (Docket No. 50, Calen-
dar No. 39,503.) Decided December 29, 1937.

Case by Marcia L. Duffy, guardian for Robert
Stevens Duffy, a minor, against Enright Topham
Company, a Michigan corporation, and another for
personal injuries sustained in a collision between a
taxicab and bicycle. Verdict and judgment for de-
fendants. Plaintiff appeals. Affirmed.

*E. C. McDonald (H. Monroe Stanton,* of counsel),
for plaintiff.

*Crane & Crane (Frank A. Rockwith,* of counsel),
for defendants.

BUSHNELL, J. Plaintiff, the guardian of Robert
Stevens Duffy, a minor of the age of 12 years, ap-
peals from a judgment entered upon the verdict of
a jury in favor of defendants.

On February 5, 1933, at about the hour of 6:30
p. m., young Duffy was riding his bicycle on Bond

street in the city of Saginaw, on his way home from a theater; he stopped at the intersection of Houghton street, where he saw defendant Enright Topham Company's taxicab about a block away, traveling in a northerly direction on the easterly side of Bond street. Bond street runs north and south until it approaches Houghton, where it begins to curve about 45 feet south of the intersection. Duffy, while crossing the intersection, observed that the taxicab was slowing down at this curve and that it then came over toward the left-hand side of the street, where he was riding. Duffy testified that he thought the taxi driver was going to swing back to the right again and, therefore, did not stop his bicycle. Almost immediately thereafter the left front fender of the cab struck his handle bars, throwing him to the ground. Defendant Brinkman, the driver of the taxicab, said that, as he was approaching the intersection, a light snow was falling and the pavement was wet; that his windshield wiper was working; that he intended to make a left-hand turn into Houghton street, and slowed down about a block away; that the left wheels of his car were between 3 and 4 feet from the west curb of Bond street as he swung over to make the turn into Houghton street. He said that when his car was about at the south curb line he saw the boy for the first time some 6 feet distant in about the center of Houghton street, that he put on his brakes but the boy "kept pedaling right through," and the accident happened in the southwest portion of the intersection. He claims that he immediately stopped, looked over the bicycle, picked up the boy and took him to the hospital. Brinkman admitted that he was on the wrong side of the street while about to make a left turn. He claimed that his lights were such that he could see 200 feet ahead but

that, in making the turn, they would not be pointing in plaintiff's direction. The bicycle was not lighted.

Arthur Gallagher was a passenger in the taxicab with his wife, sister and three children. He testified:

"Well, we started to make the corner like that. My wife saw him before I did and she said 'Look out, You are going to hit a boy there.' * * * I imagine his wheels would be about even with the sidewalk. * * *

"I think the cab started to slow up around where the bend starts in Bond street. I knew he was slowing up because I expected he would turn the next corner. I was watching the road ahead at the time. When I first saw the boy, he was about even with the east and west sidewalk. I saw him through the windshield. There was nothing to obstruct my seeing all of him. The driver was going about 10 miles per hour as he started to turn over. The boy was probably 15 to 18 feet away when I saw him, before the impact came. That would be from the time I saw him first until the driver stopped the cab. I felt the driver put the brakes on when he hit the boy. I felt them go on and we stopped right away then."

It is evident that the passengers in the taxicab observed the boy on the bicycle before he was seen by their driver.

Plaintiff seeks reversal of the judgment for defendants on the ground that the verdict of the jury is contrary to the law and evidence and that the trial judge usurped the jury's function in answering one of the five special questions submitted to it. It is also claimed that the court led the jury to believe that all the questions should be answered in the manner hereinafter indicated. Appellant says that the court was in error in instructing the jury that the boy was guilty of contributory negligence if he failed to act upon discovering the approach of defendant

on the wrong side of the road. Appellant also contends that the court should have instructed the jury on the theory of discovered or subsequent negligence.

The fact that plaintiff's ward was on the proper side of the street and defendant Brinkman was violating the statute pertaining to left-hand turns. (1 Comp. Laws 1929, § 4710) did not absolve the boy from the duty of using due care to avoid injury to himself. *Kerns* v. *Lewis,* 246 Mich. 423. See, also, *Essenberg* v. *Achterhof,* 255 Mich. 55; *Arnold* v. *Krug,* 279 Mich. 702.

With respect to the special questions, we make the following observations:

Appellant complains that the court was in error in stating that the special questions must be answered, "Yes, no, so on," and argues that this instruction led the jury to believe that the first question must be answered, Yes, and the second question, No. This argument attributes an amazing lack of intelligence to the jury and is of such little consequence that we refrain from further comment.

Question 2. "Did Robert S. Duffy have his bicycle legally equipped and lighted at the time of the accident?"

Section 4736, subd. (a), 1 Comp. Laws 1929, as amended by Act No. 64, Pub. Acts 1931, requires every vehicle upon the highway "during the period from a half hour after sunset * * * and at any other time when there is not sufficient light," to have a sufficient light, etc.

The court properly instructed the jury to answer this question in the negative. Appellant apparently does not deny that, if bicycles are included within section 4736, as amended, requiring every vehicle etc., the court was not in error in this particular. Section 4736, subd. (g), as amended by Act No. 64, Pub. Acts 1931, makes this provision expressly applicable to bicycles.

The trial court did not charge the jury as implied by the language of appellant's brief, *viz.,* "that plaintiff's ward was guilty of contributory negligence if he failed to act upon discovering the approach of defendant on the wrong side of the highway."

The actual language of the court's charge in this respect is:

"If he (plaintiff's ward) discovered that the driver of the car would not steer his car to its own side of the street, he would not be permitted to proceed into a known and positive danger which should have been apparent to one of his age and intelligence, nor could he continue on his course regardless of the approaching danger, and if he did so, he would be guilty of contributory negligence which would prevent and bar a recovery in this action."

The language of this portion of the charge is both clear and proper.

Plaintiff claims that the trial judge erred when he declined to instruct the jury on the theory of gross, discovered or subsequent negligence.

When young Duffy observed that the taxicab was coming over to the left-hand side of the street he must have known that a collision was inevitable unless he stopped or the taxicab returned to the proper side of the street. Nevertheless Duffy continued and, when the taxicab driver's attention was called to the presence of the boy in his path, it was then too late to avoid the accident.

In the most favorable view of plaintiff's case it thus appears that Duffy's negligence concurred with that of defendant Brinkman continuously to the moment of the impact and was, therefore, a proximate cause of the collision, there being no intervening or supervening cause. See *Apps* v. *Walters,* 216 Mich. 17. Under these circumstances, the doctrine of

gross, discovered or subsequent negligence cannot be applied to relieve plaintiff's ward of the consequences of his contributory negligence. *Boerema* v. *Cook,* 256 Mich. 266; *Rosenfeld* v. *City of Detroit,* 274 Mich. 650; *Anderson* v. *Bliss,* 281 Mich. 323, and *Apps* v. *Walters, supra.*

The trial court was not in error in refusing to instruct the jury on the question of subsequent negligence.

The judgment for defendants is affirmed, with costs to appellees.

FEAD, C. J., and NORTH, WIEST, BUTZEL, SHARPE, POTTER, and CHANDLER, JJ., concurred.