PERHASKA *v.* SILBERG.

1. Automobiles—Emergency—Stopping—Wrong Side of Road—Left Turn—Instructions.

In action for injuries sustained when westbound car on through street collided on the wrong side of the street with defendant's car which had made a left turn without stopping before entering such street from the north, where plaintiff's driver had observed defendant's car and had almost stopped as he was uncertain whether defendant was going to stop or not, plaintiff may not claim benefit of an emergency because of defendant's action since plaintiff's driver might have avoided collision by stopping, nor because of driver's own action in proceeding to the wrong side of the street; hence instructions based on existence of an emergency should not have been given (1 Comp. Laws 1929, § 4715).

2. Same—Contributory Negligence as a Matter of Law—Wrong Side of Road—Stopping.

Driver of westbound car in which plaintiff was riding was, as a matter of law, guilty of contributory negligence imputable to plaintiff where he was on wrong side of through city street when collision occurred with defendant's car which had made a left turn from north although plaintiff's driver, who knew the intersection was dangerous, because of snowbanks and obstructions to view, had observed defendant approach from the north and had slowed down from speed of 15 or 20 miles an hour almost to a stop and not to exceed

For definition of contributory negligence, see 2 Restatement, Torts, § 463, and for rule applying in emergencies, see § 470. That courts frequently define with particularity the standard to which plaintiff must conform to be free from contributory negligence, see § 476 and comment a. That the same general tests are applied to determine the issue of contributory negligence as in the case of negligence, see § 475 and comment a.

That under some circumstances a person may be required to anticipate that another will violate a statute, see 2 Restatement, Torts, § 290 and comment b. That a plaintiff who violates a statute is barred from recovery if his violation causes a dangerous situation contemplated by the statute and which causes his harm, see § 469. The rule of the Restatement as to imputed negligence found in § 490 is not in accord with the Michigan law.

10 miles an hour when about 35 feet from the intersection at which place he knew defendant was not going to stop as required by stop sign (1 Comp. Laws 1929, § 4715).

3. SAME—WRONG SIDE OF ROAD.

One who drives on the wrong side of the road assumes the liability for so doing.

4. SAME—THROUGH HIGHWAYS.

The driver of a car on a through highway must keep such lookout ahead and to the sides and down intersecting highways as a reasonably prudent person would do in order to discover possible danger and must act carefully upon the existing conditions.

5. SAME—OBSERVATION OF AN ONCOMING CAR.

If one is to make proper observation of an oncoming car the observation must include not only the distance the approaching car is from the point of possible collision but also some observation and judgment of its approximate speed.

6. SAME—STOPPING.

It is common knowledge that a car with good brakes on a good highway and travelling at a speed of less than 10 miles per hour can come to a complete stop within a distance of 45 feet.

Appeal from Gogebic; Landers (Thomas J.), J. Submitted April 14, 1942. (Docket No. 52, Calendar No. 41,926.) Decided June 10, 1942. Rehearing denied September 8, 1942.

Case by Elizabeth Perhaska against K. P. Silberg for personal injuries sustained in a collision between automobiles. Verdict and judgment for plaintiff. Defendant appeals. Reversed without a new trial.

*Bernard E. Larson* (*E. W. Massie,* of counsel), for plaintiff.

*S. W. Patek* (*Leonard J. McManman,* of counsel), for defendant.

SHARPE, J. This is an action by plaintiff, Elizabeth Perhaska, against K. P. Silberg for damages

for personal injuries alleged to have been sustained by plaintiff on March 10, 1940, in a collision between an automobile owned and operated by George Pisca, in which plaintiff was riding as a guest, and an automobile owned and operated by defendant.

The collision occurred at or near the intersection of McLeod avenue, which runs east and west, and Curry street, which runs north and south, in the city of Ironwood, Michigan. Curry street is 30 feet wide from curb to curb; while McLeod avenue is 32 feet wide from curb to curb. On the northeast corner of the intersection there is a paint shop fronting on Curry street with its side on McLeod avenue; and east of the paint shop is located an armory. In front of the armory is a telephone pole which is located 135 feet east of the east curb of Curry street. There were snowbanks along the curbs of the streets.

' Defendant was driving his automobile south on Curry street at a speed of 15 to 20 miles per hour. He slowed up as he approached McLeod avenue, but did not heed the stop sign.* He entered McLeod avenue and proceeded to make a left turn. He collided with the car in which plaintiff was riding about four feet east of the southeast corner of the intersection of McLeod avenue and Curry street. Plaintiff was riding in a car owned and operated by George Pisca. He was driving west on McLeod avenue on the right side of the street. He was traveling between 15 and 20 miles per hour. When he was about 60 feet east from the east line of the intersection, he saw a car approaching from the north on Curry street and when first seen by Pisca, the automobile was about 40 feet from the north line of the intersection. When Pisca was about 30 feet

* See 1 Comp. Laws 1929, § 4715 (Stat. Ann. § 9.1583).—REPORTER.

from the east line of the intersection, he had slowed his car down to about 10 miles per hour and 'observed that the approaching automobile was not going to stop before entering the intersection. Pisca then turned to the left because he thought he would hit the approaching automobile if he kept on straight ahead. No other cars were in the intersection at the time of the collision.

As a result of the collision, plaintiff was severely injured. The cause came on for trial and at the close of plaintiff's case, and again at the close of all testimony, defendant made a motion for a directed verdict as follows:

"The evidence shows that George Pisca, the driver of the automobile in which plaintiff was riding, was guilty of negligence, as a matter of law, which contributed to the accident and which is imputed to plaintiff, for it is undisputed that the collision occurred on plaintiff's wrong side of the road and defendant's right side of the road."

This motion was denied by the trial court and the cause was submitted to a jury which returned a verdict in favor of plaintiff in the sum of $10,000.

Defendant filed a motion for a new trial. The motion was denied, but the trial court reduced the verdict and judgment from $10,000 to $7,500 and from this reduction plaintiff cross-appeals. Defendant also appeals and urges that plaintiff's driver was guilty of contributory negligence as a matter of law and that this negligence is imputed to plaintiff; that the trial court was in error in giving any instructions to the jury regarding the use of mortality tables; and that the damages awarded plaintiff were excessive.

In the case at bar we have narrated the facts in the light most favorable to plaintiff. Additional facts are as follows: The road conditions were good;

and the brakes on Pisca's car were in good order.

Plaintiff urges that an emergency was created by defendant which excuses plaintiff's driver in the course he pursued subsequent to his approach to within 30 feet east of the intersection.

The trial court instructed the jury upon this question as follows:

"On this subject of emergency, you are instructed that the law is that persons suddenly placed in a position of peril and impending danger are likely to do things which ordinarily might be acts of negligence. But acts done in such extreme circumstances are not to be judged by ordinary rules and if an act has to be performed in a brief period, in an instant, with no time in which to determine the best course, neither negligence nor contributory negligence can be predicated upon that particular act.

"Where one is required to act suddenly and in the face of imminent danger, the law does not require him to exercise that same degree of care as if he had time for deliberation and the full exercise of his judgment and reasoning faculties. And this is especially true where the peril has been caused by the fault of another. A person thus situated in an emergency will not be guilty of either negligence or contributory negligence merely because he failed to exercise the care a prudent person would have exercised under these circumstances, or because he failed to exercise the best judgment or take every precaution which he might have taken, which, from a careful review of the circumstances, after the accident, it appears he might have taken and might have avoided the injury, and this applies to both a defendant in an emergency and the person injured in an emergency. If such person in good faith acts as a person of ordinary prudence might have acted under the circumstances, he will not be guilty of either negligence or contributory negligence even though the act done is actually dangerous and re-

sults in injury in attempting to escape the dangers. But, such acts must be done suddenly and under impending danger.''

It is established that George Pisca knew that this intersection was a dangerous one for cars driving west on McLeod avenue. He testified as follows:

"I knew that Curry street and all these intersections were dangerous intersections. They required one to be on the lookout, no matter which way you were going. This building and the snowbank, the building at the northeast corner and the snowbank, obstructed any view on Curry street as you were going west on McLeod avenue until you got near to the intersection. That is the direction I was going. It would be difficult for anyone travelling on McLeod Avenue to see vehicles coming north or south on Curry street until you got close to the intersection. When one drives on McLeod avenue he would have to be very much on the look-out.  *  *  *

"Q.  At the time you were back here at the east end of the paint shop (indicating on sketch) and saw the Silberg car, how fast were you going?

"A.  15 to 20 miles an hour.

"Q.  Then, when you saw the Silberg car, you slowed down?

"A.  Yes.

"Q.  That was when you were at the east end of the paint shop?

"A.  Yes.

"Q.  You slowed down for what?

"A.  I didn't know for sure if he was going to stop or going through.

"Q.  What speed did you slow down to?

"A.  Well, just about to a stop.

"Q.  You almost came to a stop?

"A.  Yes."

In our opinion the above instructions should not have been given. There was no emergency created

by defendant that could not have been avoided by plaintiff's driver. If the claimed emergency came into existence when defendant entered the intersection without stopping at the stop sign, then plaintiff's driver could have stopped his car in time to have avoided the accident; or if the claimed emergency was created when plaintiff's driver was on the south side of McLeod avenue, then it came about by the act of plaintiff's driver in being on the wrong side of the road. In either case plaintiff may not claim the benefit of an emergency.

In our opinion, plaintiff's driver was guilty of contributory negligence as a matter of law. It is an established fact that plaintiff's driver was on the wrong side of the road when the collision occurred.

"One who drives on wrong side of road assumes the liability for so doing.   *   *   *
"If it was necessary for defendants to drive upon the wrong side of the highway, in violation of the provisions of the statute, it was incumbent upon defendants to show the circumstances of such necessity." *Sanderson* v. *Barkman,* 264 Mich. 152, 154.

Plaintiff's driver knew he was approaching a dangerous intersection.

"On the other hand, he (driver on a trunk line highway) must keep such look-out ahead and to the sides and down intersecting highways as a reasonably prudent person would do in order to discover possible danger and must act carefully upon the existing conditions." *Arnold* v. *Krug,* 279 Mich. 702, 708.

In *Ayers* v. *Andary,* 301 Mich. 418, 425, we said:

"If one is to make a proper observation of an oncoming car under the circumstances of the instant case, the observation must include not only the dis-

tance the approaching car is from the point of possible collision but also some observation and judgment of its approximate speed.''

In the case at bar, plaintiff's driver made such observations, but evidently was not impressed by what he observed.

Under the circumstances of this case, plaintiff's driver had a duty to use due care as he approached the intersection. When he was 30 feet east of the intersection and 45 feet from the center line of Curry street, he knew that defendant was entering the intersection without heeding the stop sign. At this point plaintiff's driver was traveling at a speed of not to exceed 10 miles per hour. It is common knowledge that a car with good brakes, on a good highway and traveling less than 10 miles per hour, can come to a complete stop within a distance of 45 feet. Moreover, no reason has been shown why plaintiff's driver could not have made a right turn or driven straight ahead. In either case, the accident would have been avoided. Plaintiff's driver knew that defendant was making a left turn and was proceeding east on McLeod avenue, yet in spite of this knowledge, Pisca did nothing except get in the way of the oncoming car. His action in the premises makes him guilty of contributory negligence as a matter of law and such negligence is imputed to plaintiff, an occupant of his car.

In view of our conclusion, we find it unnecessary to discuss other defenses relied upon by defendant.

The judgment of the trial court is reversed, without a new trial. Defendant may recover costs.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, and BUSHNELL, JJ., concurred. WIEST, J., took no part in this decision.