PAW PAW DEPOSITORS CORP. v. JOHN W. FREE STATE BANK.

1. BANKS AND BANKING—CONTRACTS—ASSIGNMENTS.
    Defendant bank which took over assets and assumed liabilities of a reorganized bank *held*, to have no greater rights under contract latter had made with plaintiff liquidating agency than had defendant's assignor.

2. APPEAL AND ERROR—DISAGREEMENT OF JURY—JUDGMENT FOR DEFENDANT—EVIDENCE.
    On review of judgment for defendant on motion therefor, entered after disagreement of jury, evidence is reviewed in light most favorable to plaintiff.

3. BANKS AND BANKING—LIQUIDATION—AUTHORITY.
    In suit by liquidating agent created upon reorganization of a bank, against reorganized bank's successor, defendant bank, for losses sustained by alleged unauthorized sale of plain-

tiff's interest in assets, plaintiff, through its directors, *held*, bound to know that defendant bank did not have power to sell the assets in question without plaintiff's consent or, in lieu thereof, the approval of the State banking commissioner.

4. SAME—LIQUIDATION—AUTHORITY—ESTOPPEL.

Authority to dispose of assets of reorganized bank, given defendant bank which assumed liabilities and took over assets thereof, by plaintiff liquidating agent of the reorganized bank *held*, not confined to bonds in default or those not producing an income nor may such authority be questioned weeks after plaintiff received reports of and receipts from sales of such assets.

5. SAME—LIQUIDATION—AUTHORITY—GOOD FAITH—EVIDENCE.

In action against defendant bank for damages resulting to plaintiff, liquidating agent of reorganized bank taken over by defendant, because of alleged unauthorized sale of plaintiff's interest in certain bonds, record *held*, not to raise question of fact as to whether bonds were disposed of at such time and at such price as would be to the best interests of plaintiff and, aside from stipulation of lack of fraud in connection with sales of bonds, presented no evidence indicating lack of good faith on part of defendant's president and active manager in sales made.

Appeal from Van Buren; Sample (George W.), J., presiding. Submitted October 15, 1936. (Docket No. 122, Calendar No. 39,185.) Decided January 4, 1937.

Action by Paw Paw Depositors Corporation, a Michigan corporation, against John W. Free State Bank, for damages for unlawful and unauthorized sale of bonds. Jury disagreed. Judgment for defendant. Plaintiff appeals. Affirmed.

*David Anderson, Sr.,* for plaintiff.

*Earl L. Burhans* and *Mason, Sharpe & Stratton,* for defendant.

NORTH, J.   In this suit plaintiff seeks damages from defendant because of an alleged "unlawful and unauthorized sale" of plaintiff's interest in certain bonds.   Trial by jury resulted in a disagreement, but thereafter the trial judge considered defendant's motion theretofore made for a judgment in its favor.   The motion was granted and from the judgment entered plaintiff has appealed.

Prior to the bank holiday of February, 1933, two State banks were in business in Paw Paw, Michigan. One was the Paw Paw Savings Bank, the other the John W. Free State Bank.   We will designate them as the savings bank and the state bank, respectively. Both banks closed, went into conservatorships, were reorganized and reopened.   Plaintiff corporation was organized to take over and liquidate the slow assets of the savings bank, it being contemplated that this work would be carried on by the officers and employees of the reorganized savings bank. But soon after the savings bank reopened it was taken over by the state bank, which assumed the liabilities of the savings bank and succeeded to its assets.   In the assets so taken over there was the savings bank's interest in 17 bonds totaling in par value $16,500.   In the reorganization of the savings bank each of these bonds had been included in its assets at a fixed amount, which was first to be realized by the bank, but any additional amount derived from the sale of the respective bonds belonged to the plaintiff corporation as a liquidating agency. Three men constituted the stockholders and officers of plaintiff organization.   Dr. VanVleck was the president, Mr. Maguire vice-president and Mr. Hood secretary.   Mr. Free was the president and active manager of the state bank. These four men held a meeting on November 24, 1934, at which there was

discussion of the ways and means of carrying on the business of plaintiff liquidating corporation, which had engaged a Mr. and Mrs. Bolinger to take charge actively on or about December 1, 1934. At this meeting the following action was taken by plaintiff's officers:

"Special meeting of Paw Paw Depositors Corporation was held on Nov. 24, 1934, at 7:30 p. m. in the John W. Free State Bank.

"Motion was made by Delbert Maguire that the John W. Free State Bank be authorized to liquidate at such time and at such price as would be to the best interests of the Depositors Corporation. Seconded. Carried unanimously.

"Max Hood, Sec'y."

The foregoing action seems to have been taken because the contract under which the plaintiff took over some of the assets of the savings bank provided that the savings bank could not dispose of bonds or other securities so taken over except with the consent of the plaintiff liquidating corporation. The state bank as successor to the savings bank had no greater rights. About a month following the meeting of November 24th, Mr. Free arranged with a Chicago trust company for the sale of certain bonds. By January 10, 1935, all of the 17 bonds involved in this litigation were sold. Detailed reports of the respective sales as consummated were made by defendant to plaintiff on the following dates: December 30th, January 4th, 10th and 12th. Remittances to plaintiff accompanying such reports totaled $2,577.04.

In reviewing the court's entry of judgment for defendant, the testimony in this record must be considered in the aspect most favorable to plaintiff. The question for review is this: Does the record

present an issue of fact for a jury? It is plaintiff's claim "there exists in the case a question of fact as to what authority was given by the directors * * * on November 24, 1934." We quote from appellant's brief:

"The question of authorization must depend solely on the proceedings of the meeting of November 24th, at which time the resolution, Exhibit D, was adopted by the corporation. It is admitted and claimed by both sides, that this resolution is ambiguous, and that oral testimony is permitted and required to inform the court and jury as to what was really done and was really meant thereby."

The record also discloses the following stipulation between counsel:

"It is agreed by counsel in connection with the settlement of this record that plaintiff does not claim fraud in connection with defendant's decision to sell the bonds in question or in defendant's action in making sales at the times they were made, not intending, however, to waive plaintiff's claim that such sales were made without authority therefor."

Just preceding the taking of testimony plaintiff's counsel defined his position by making the following statement:

"I take two positions on that: One is, that the resolution (of November 24, 1934) of itself does not give authority to sell bonds, and if that is not the ruling of the court it gives no authority to make any such sale as was made here, and the sale, if made, must be made for the benefit of the corporation, and the burden of proof is on the defendant to show it was."

It is plaintiff's contention that Mr. Free at the meeting of November 24th misrepresented to plain-

tiff's directors that he had the power to dispose of the bonds regardless of their wishes, and that he called their attention to two or three bonds which were in default and stated "some of these bonds need attention." Plaintiff takes the position that because of such statements by Mr. Free, plaintiff's directors in passing the resolution of November 24th did so believing that he already had the authority to dispose of the bonds without their consent and that the resolution pertained only to bonds needing attention, meaning thereby bonds in default.

For sometime prior to November, 1934, the defendant bank had possession of the bonds covered by the liquidation contract. Three of these bonds of the total par value of $2,500 were in default and one other bond of the par value of $1,000 was not of a market value equal to defendant's interest in this particular security. The 17 bonds, as to the sale of which plaintiff complains, were not in default. Plaintiff asserts there is some evidence in the record of lack of authority in defendant to sell these bonds because plaintiff's directors understood from Mr. Free that he proposed to dispose of the poor securities, not those which were not in default. In other words, plaintiff claims there was some testimony from which a jury might find that defendant did not have authority to sell the 17 bonds, and that such sale resulted in a financial loss to plaintiff and, therefore, the trial court was in error in entering judgment for defendant. Appellant also asserts that there is a question of fact as to whether or not the sale was at such a price and time as would be to the best interest of the Depositors Corporation.

We have reviewed the record carefully and fail to find testimony tending to sustain plaintiff's position. While, as counsel seems to concede, there may be

some ambiguity, the action taken November 24, 1934, by plaintiff's three directors, is recorded in terms that are reasonably definite and understandable. The motion was drafted by the secretary of plaintiff corporation "after considerable discussion." It was carried unanimously. The record of this action of plaintiff's directors was read and approved at the annual meeting of its directors held January 7, 1935. On this date the directors were already aware that 12 of the 17 bonds had been sold and that plaintiff corporation had in its possession its shares of the moneys received for such sales. Plaintiff corporation did not attempt to rescind its action of November 24th until January 12, 1935. Before this date bonds had not only been sold, as above noted, but plaintiff corporation had from time to time been given detailed reports of such sales from which it received a total of $2,375.59. Plaintiff retained this money, although sometime later it offered to repay the amount received if defendant would return the bonds to the plaintiff. No complaint is made that any of these bonds were sold for less than the market value but instead that the market price was improving and that within a reasonable time the increase in market value of at least 12 of the 17 bonds sold was such that plaintiff has sustained a substantial loss because of the earlier sales.

Plaintiff, through its directors, was bound to know that neither Mr. Free nor the state bank had power to sell the bonds in question without plaintiff's consent or, in lieu thereof, the approval of the State banking commissioner. The contract governing this phase of the case is too plain to be misunderstood. It provides:

"No bond or other similar securities shall be sold or otherwise disposed of by the bank without the

consent of the corporation, provided that in the event that the corporation does not consent to the proposed sale or other disposition of any of such securities, the bank may call upon the commissioner of the banking department of the State of Michigan to finally decide the matter, and his decision shall be final and binding upon the parties hereto.''

The knowledge or lack of knowledge possessed by plaintiff's directors at the time of the meeting of November 24th is fairly well indicated by the following testimony of Mr. Maguire:

''*Q.* Now you knew at that time (November 24th) that if you objected to the sale of any bonds or (as) just stated here that in event that you didn't consent, that the matter might be referred to the banking department at Lansing? * * *

''*A.* Well, we knew it, but we didn't any of us think about it.''

While Mr. Free denied having stated to plaintiff's directors that he had the authority to sell the bonds without plaintiff's consent, for decision herein we must accept the contrary testimony offered in behalf of plaintiff. But even then the record would not present a question of fact for a jury because of a lack of testimony that in the absence of such misstatement plaintiff's directors would not have taken the action they did at the meeting of November 24th. Both touching this phase of appellant's contention, as well as the further contention that the resolution of November 24th at most only gave defendant bank authority to dispose of bonds needing attention, *i. e.,* the bonds in default, the record entirely refutes plaintiff's claim. We quote from testimony given by plaintiff's witness on cross-examination which reveals the circumstances in consequence of which plaintiff's directors took their action of November

24th.  We quote in part from the testimony of Dr. VanVleck, president of plaintiff corporation:

"Then the bonds came up (at the meeting of November 24th), and Mr. Free said that we had a class of bonds that needed looking after, and that some of them—I think 2 out of 21 or 22 bonds—were in default.  And he said that inasmuch as we were not in a position where from day to day we could keep checked up on those bonds, he would like to keep checked up on them, and help us any way he could on them. * * * Mr. Free suggested he thought that the list of bonds ought to have some attention, and by passing the resolution I agreed with him that they ought to have some attention.  Mr. Free also said that he kept rather close tally and contact with the market on bonds of that nature, and of these particular bonds; and we suggested to him that we were not any of us in position to do that; he suggested the question whether we were willing to rely upon his guidance and judgment, and I concurred in that suggestion.  He said: 'All you will have to do is to rely on my guidance and honesty in connection with it.'  And I said: 'That is all right, we haven't any question about that.' * * * At this meeting of November 24th I believe Mr. Free discussed the activities of congress then apparent with reference to utility holding companies, and the apparent effect of that activity upon utility bonds.  I know that about this time congress was active against utility holding companies."

The only fair and reasonable conclusion that can possibly be drawn from this record is that by their action of November 24th plaintiff's directors authorized Mr. Free, acting for the defendant bank, to liquidate the bonds in question.  As to the bonds now in suit, this had been accomplished with the knowledge of plaintiff's directors weeks before the

directors took action canceling the authority previously given the defendant bank to liquidate the bonds. The authority granted was not confined in any way to bonds in default or those not producing an income. One of the grounds assigned in support of defendant's motion for a directed verdict is:

"That under the undisputed testimony the sale of the bonds was authorized by proper action of the corporation, and the corporation cannot now deny that authorization and claim any damages by reason of activity which was resultant to that authorization."

We think this reason was a sufficient ground for the action of the trial judge in granting defendant's motion.

Careful consideration of this record, especially in view of the stipulation of counsel hereinbefore quoted, forces the conclusion that appellant's contention that there is here presented a question of fact as to whether the bonds were disposed of at such time and at such price as would be to the best interests of the Depositors Corporation, cannot be sustained. Entirely apart from the stipulation of lack of fraud in connection with the sale of the bonds, there is no testimony which in any way tends to indicate a lack of good faith on the part of Mr. Free in disposing of these securities.

Judgment entered in the circuit court is affirmed. Costs to appellee.

Fead, C. J., and Wiest, Butzel, Bushnell and Sharpe, JJ., concurred. Toy, J., took no part in this decision. Potter, J., did not sit.