SAVAS *v.* BEALS.

1. AUTOMOBILES—NEGLIGENCE—SPEED—WRONG SIDE OF ROAD—QUESTION FOR JURY.

In action against motorist for injuries suffered by plaintiff when he drove his car off pavement to his right to avert hitting defendants' car being driven on wrong side of road where evidence as to defendant's speed and presence of repair work necessitating his being on wrong side of road is in conflict, question of defendant's negligence was for jury.

2. APPEAL AND ERROR—DISAGREEMENT OF JURY—EVIDENCE.

In reviewing a judgment for defendant entered by the trial court after jury disagreement, Supreme Court views the evidence in the light most favorable to plaintiff (3 Comp. Laws 1929, § 14535).

3. AUTOMOBILES—REPAIRS TO HIGHWAY—WRONG SIDE OF ROAD—DUE CARE OF PLAINTIFF.

Fact that defendant motorist approached scene of accident on wrong side of highway because of repair work on right side thereof would not excuse plaintiff motorist who was travelling in opposite direction from exercising that degree of care and caution which an ordinarily careful and prudent person would have exercised under the same or similar circumstances as it was plaintiff's duty to maintain proper observation of the highway ahead and of approaching traffic.

4. SAME—PRESUMPTION AS TO OBSERVATION.

Plaintiff motorist who had a view ahead of 400 to 500 feet was chargeable with what he could have seen had he made proper observation and he either saw or is presumed to have seen approaching car driven by defendant on wrong side of road.

5. SAME—WRONG SIDE OF ROAD—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW—TURNING OFF PAVEMENT.

Plaintiff motorist was guilty of contributory negligence as a matter of law where in midafternoon he failed to see that

Existence of risk of harm because of actor's failure to observe, see 2 Restatement, Torts, § 289, and particularly comment (e).

Conduct in emergency as contributory negligence, see 2 Restatement, Torts, § 470.

left side of road was barricaded and although he had a view ahead of 400 to 500 feet failed to see defendant's car approaching on wrong side of road until so close that in turning off pavement plaintiff collided with a tree said to have been 10 to 19 feet from right edge of pavement.

6. SAME—CONTRIBUTORY NEGLIGENCE—SUDDEN EMERGENCY.

Plaintiff motorist who failed to notice in midafternoon that left side of road was barricaded or that defendant's car was approaching on wrong side of road plainly within plaintiff's view may not excuse his contributory negligence on ground that he was suddenly confronted with an emergency where he himself helped to create it.

Appeal from Ingham; Hayden (Charles H.), J. Submitted October 8, 1942. (Docket No. 52, Calendar No. 42,018.)  Decided December 23, 1942.

Separate actions of case by Charles V. Savas and Lillian Savas against George Beals and another for personal injuries sustained alleged to have been due to negligence of defendants. Disagreement of jury. Judgment for defendants. Plaintiffs appeal. Affirmed.

*John D. Lynch,* for plaintiffs.

*Shields, Ballard, Jennings & Taber,* for defendants.

STARR, J.   Plaintiff Charles V. Savas and his wife, plaintiff Lillian Savas, were injured in an automobile accident occurring about 3 o'clock in the afternoon on November 1, 1940, on State highway M–113 at a point about three miles east of the town of Kingsley. To recover their respective claims for damages resulting from such accident, plaintiff Charles V. Savas and his wife began separate suits against defendants George Beals, his wife Lillian Patterson Beals, the Michigan State highway de-

partment, and G. Donald Kennedy as State highway commissioner. Prior to trial, by stipulation and order, the suits were dismissed as to the State highway department and the highway commissioner.

The two cases were consolidated for jury trial in circuit court. At the conclusion of plaintiffs' proofs and again at the conclusion of all proofs defendants moved for directed verdicts of no cause of action on the ground that the testimony did not establish negligence on the part of the defendants and that plaintiff driver Charles V. Savas was guilty of contributory negligence. Both such motions were denied. The cases were submitted to the jury which was unable to agree upon verdicts and was discharged.

After such jury disagreement defendants, in pursuance of 3 Comp. Laws 1929, § 14535 (Stat. Ann. § 27.1471), filed motions for the entry of judgments of no cause for action upon the evidence and proofs taken. The trial court granted such motions and entered judgments for defendants. Plaintiffs appeal from such judgments, and the parties have stipulated that both cases shall be considered and determined as one on this appeal. For sake of brevity in this opinion we shall refer only to the case of plaintiff Charles V. Savas.

Plaintiff Savas, a traveling salesman about 43 years old, accompanied by his wife, plaintiff Lillian Savas, was driving his 1940 Ford automobile in a westerly direction on State highway M–113. The highway was level, about 18 feet in width, and of hard-surfaced construction. The berms of shoulders on each side of the paved portion were nine feet wide, hard, and fairly level. The day was cloudy, and it was raining or misting. Plaintiff testified that "visibility was not so good but it wasn't so bad." Plaintiff, who was familiar with

the highway, was driving on the right (north) side at a speed, according to his testimony, of 35 to 40 miles an hour and had reached a point about three miles east of the town of Kingsley where the accident occurred. He testified, in part:

"I came to a mound or small hill and when I arrived at the top of the hill, I saw another car (defendant's) coming at a tremendous speed, about 20 or 25 feet away from my car and I turned. My instinct told me—I automatically turned to the right, and started off the highway and gave the right of way to this man. * * *

"Q. What would you say was the rate of speed at which the car was traveling as it came toward you?

"A. 55 or 60 miles an hour, around there, a very good speed.

"Q. He too was traveling on the north (wrong) side of the highway?

"A. On the wrong side of the highway. * * *

"Q. Did your car and the car being operated by defendant, George Beals, actually collide? * * *

"A. No, I got out of the way so we would have no collision."

Plaintiff testified, in substance, that the cars did not collide; that to avoid a collision, he turned his car to the right (north) off the highway and hit a tree located 10 or 12 feet, "maybe 14, * * * possibly" 18 or 19 feet from the north edge of the pavement. Plaintiff's car was damaged, and he and his wife were injured. The only eyewitnesses to the accident were plaintiff, his wife, and defendant George Beals who was driving alone.

Despite plaintiff's testimony to the contrary, the evidence establishes the fact that the south half of the paved portion of highway M-113 was being repaired and, at the scene of the accident and for

some distance in each direction, was covered with an oily substance, also referred to as "prime," preparatory to resurfacing; that the accident occurred in a repair zone about three miles long, protected at its east and west ends by barriers, warning signs, and flagmen; that on the day of the accident westbound traffic in such repair zone was instructed, on meeting eastbound traffic, to detour off the pavement and onto the adjoining berm or shoulder; that eastbound traffic in such repair zone was instructed to drive on the north (wrong) side of the pavement. However, both plaintiff and his wife testified, in substance, that they saw no barricade, warning signs, flagmen, or watchmen, and saw no evidence of the road's being under repair. Plaintiff said, "I didn't see nothing. * * * I didn't make it my business to look at it."

Plaintiff's testimony as to his clear and unobstructed vision to the west as he approached the scene of the accident is particularly important. He testified further, in part:

"*Q.* As you went up that mound, how far down ahead of you could you see to the west?

"*A.* You can see if you make it your business, up to the top of the hill. * * *

"*Q.* What is the distance then?

"*A.* About 400 or 500 feet. * * *

"*Q.* Are you sure it is not more than that?

"*A.* Maybe more, I don't know. * * *

"*Q.* You told us you could stop your car within 10 or 12 feet, didn't you?

"*A.* Yes, sir, if I want to stop it I could.

"*Q.* Believing your life was in danger, you swung off this highway and you went a distance of something over 100 feet before you ran into the tree. Will you explain just why you didn't stop within that 100 feet if you could stop within 10 or 12 feet?

"*A.* I couldn't explain that. As to what happened after that, I couldn't tell you. Why I didn't, I can't tell you. * * * Technically, I don't know. * * *

"*Q.* Did you apply your bráke at any time during that 100 or so feet you were driving?

"*A.* I don't remember. * * *

"*Q.* * * * Do you remember the back end of your car skidding over onto this oily substance on the south side of the pavement and then shooting across the pavement and then up to the tree and the bank there by the side of these trees?

"*A.* I don't remember. * * *

"*Q.* Would you say your car didn't swing over into this oily substance, the tail end of your car? * * *

"*A.* I don't know, maybe it did. * * *

"*Q.* Didn't you see he (defendant) was slowed up and was practically at a standstill when you went in front of him and off on the gravel?

"*A.* He slowed down."

Defendants present an entirely different version of the accident. During the *forenoon* of the day of the accident defendant George Beals drove an automobile owned by his wife, defendant Lillian Patterson Beals, in a westerly direction over M–113 on his way from Cadillac to Traverse City. He testified there was a barrier and warning sign located, and a flagman stationed, at the east end of the repair zone; that the warning sign indicated the road was under repair and that the flagman instructed him "to go on my own (north) side of the road until I met a car (east bound) and then I was to take to the shoulder of the road and allow the car to pass through on the highway." Defendant Beals testified further as to his return from Traverse City east over M–113 in the *afternoon* and regarding the accident, in part, as follows:

"As I came to the westerly end of this repair zone, I found a barrier there and a watchman. The watchman stopped me.  *  *  *  He gave me my instructions and I started on.  *  *  *  There was a barrier there and a sign indicating the road was under repair. I believe the watchman at the other end on one previous trip through there had told me that there was oil or preparation on the south lane of the highway at that time. I could see that there was as I drove along.

"*Q.* You proceeded in the north (left) lane going in an easterly direction and came up the hill. Tell the jury what, if anything, you saw in front of you on down the hill?

"*A.* Well, the crest of this hill, I got on top of it and started down, a slight incline there, up over the crest of a small hill or knoll, you might say, and I saw the car (plaintiff's) coming at me at a really terrific rate of speed. As soon as I saw the car coming, I knew it was a logical place for an accident, something of that sort to happen, the rate of speed he was going, so I immediately applied the brakes very slightly and started to slow down. This car continued to come right at me *so I came to a complete stop.* This car was coming at me and evidently the driver, he must have applied his brakes on this wet pavement, the rear of his car slid over into this oily base and he slid sideways for some distance there, and then the car must have got traction again, and it shot across in front of me. He left the shoulder of the road and continued on there and started to go down between two trees. As I looked back through my side window, I thought he was going to make it between the two trees. He got practically between the two of them and his car straightened out and collided with the tree.

"*Q.* Had you stopped at that time?

"*A.* I was stopped at that time.  *  *  *

"*Q.* Can you give an estimate of the distance ahead of you, east of you, he passed in front of you, going to the north side of that pavement?

"*A.* I believe it was a distance of about 25 or 30 feet, it seemed to me. Of course, he was going so fast it was hard to tell the distance, the rate of speed he was going. * * *

"*Q.* * * * Could you estimate the speed that car was coming?

"*A.* Well, it seemed to me he was doing at least 50 or 60.

"*Q.* How far would you say he was away from you when he applied his brakes and started to swerve down into that oily substance?

"*A.* Well, he must have been, when he first applied the brakes, at least 300 feet away from me.

"*Q.* He skidded through that oily substance, and then across the pavement?

"*A.* That is right. * * *

"*Q.* Was the atmosphere, visibility there such that you could see at that particular time?

"*A.* Yes. * * *

"*Q.* You would have had ample time to turn off on the right side or southerly side of the highway?

"*A.* Yes.

"*Q.* But you didn't do that?

"*A.* No, I was told to drive on the northerly half of the highway and having been over that road before from the easterly direction, I knew what orders the other driver should have been driving under. * * *

"*Q.* You stopped the car, believing he would turn to the right and get out of the way?

"*A.* Yes."

There was testimony indicating that one approaching the scene of the accident from the east would have a clear and unobstructed view of the highway westward for several hundred feet. There

was also testimony indicating that plaintiff's car, after leaving the north side of the pavement, traveled a distance of about 140 feet before it struck a tree. A State police officer who investigated the accident an hour or so after its occurrence testified, in part:

"We approached this accident from the west and came down from Traverse City into Kingsley. Before arriving at the scene of the accident, I saw barricades and construction signs. This strip of road mentioned was under construction. They were resurfacing one-half of it at a time, and upon coming upon the section that was under construction, there was a watchman and a huge sign placed at each end of this section of the road that was under construction. The watchman stopped all cars and cautioned you to drive very carefully while passing through this section. I saw a watchman and sign at the westerly end of the section. The side under construction was the south side. * * * After observing the situation where the accident took place, we went down east and found a watchman and a sign duplicating what we observed on the west side. The north shoulder of the road where the accident happened was a regular gravel shoulder for a few feet and then was sodded, grass. Each way, both east and west from the point where the car sat against the tree, we could see some distance."

In his opinion granting defendants' motion for a directed verdict, made after jury disagreement, the trial court said, in part:

"On this record, it cannot be said as a matter of law that defendant was free from negligence. * * *
"Whether the plaintiff can, as a matter of law, be said to have been guilty of contributory negligence is a very close question. * * *
"As a general proposition, the driver of a motor vehicle on a highway is required to observe the

road, to see what is clearly there to be seen, and it would therefore seem to follow that plaintiff should make the reasonable and natural deduction from what he saw, or should have seen, and that he should be held responsible if he fails to do so. * * *

"The essential thing is that plaintiff looked too late, and in so doing he helped to create an emergency because he did not look soon enough, and, as unfortunate as the results may have been, he may not now escape the consequences of his act in an emergency which he himself helped to create."

The conflicting testimony of plaintiffs and that of defendant George Beals and other witnesses clearly presented a question of fact, for jury determination, as to defendants' negligence. Therefore, the only question for review on this appeal is whether or not plaintiff driver was guilty of contributory negligence as a matter of law. In reviewing a judgment for defendant entered by the trial court after jury disagreement, we view the evidence in the light most favorable to plaintiff. *Poundstone* v. *Niles Creamery,* 293 Mich. 455; *Paw Paw Depositors Corp.* v. *John W. Free State Bank,* 278 Mich. 637.

Defendants' car was approaching the scene of the accident from the west. It was misting or raining and, as plaintiff said, "visibility was not so good but it wasn't so bad." His own testimony indicates that the visibility was such that, when approaching the scene of the accident, he could see 400 or 500 feet to the west. His statement as to his view of the highway was substantiated by the testimony of other witnesses. The cars did not collide, as plaintiff turned to his right off the pavement. According to his testimony he was driving 35 to 40 miles an hour and could have stopped his car within 10 or 12 feet. However, the record indicates that, after turning to his right off the pavement, he drove more

than 100 feet in a northwesterly direction and struck a tree.

The fact that defendants' car was approaching the scene of the accident on the north (wrong) side of the highway did not excuse plaintiff driver from exercising that degree of care and caution which an ordinarily careful and prudent person would have exercised under the same or similar circumstances. It was plaintiff's duty to maintain proper observation of the highway ahead of him and of approaching traffic. *Arnold* v. *Krug,* 279 Mich. 702; *Meisenheimer* v. *Pullen,* 271 Mich. 509; *Luck* v. *Gregory,* 257 Mich. 562; 2 Berry on Automobiles (7th Ed.), §§ 2.503, 2.504.

As he approached the scene of the accident, plaintiff had a view 400 to 500 feet to the west, and he is chargeable with what he could have seen had he made proper observation. He either saw or is presumed to have seen defendants' car approaching. In *Heckler* v. *Laing,* 300 Mich. 139, 145, we said:

"Plaintiff's decedent, in making the required observation on US–2, is presumed to have seen what a person in the exercise of ordinary care and caution would see; that is, what was plainly visible."

In *Gallagher* v. *Walter,* 299 Mich. 69, 76, we stated:

"In making such observation plaintiff's driver would be presumed to see the things which a person in the exercise of ordinary care and caution would see under like circumstances."

See, also, *Nelson* v. *Linderman,* 288 Mich. 186; *Slingerland* v. *Snell,* 283 Mich. 524; *Zuidema* v. *Bekkering,* 256 Mich. 327.

We are satisfied that had plaintiff exercised reasonable care and caution, he could have observed de-

fendants' car in ample time to have avoided the accident. The testimony of plaintiff driver and that of other witnesses, considered in connection with the physical facts and circumstances of the accident, conclusively establishes that plaintiff driver was negligent. The question of plaintiff's contributory negligence is not one upon which the minds of men might reasonably differ. Mr. Justice NORTH's statement in the majority opinion in *Ayers v. Andary,* 301 Mich. 418, 424, is particularly applicable to the case at hand:

"It overtaxes one's credulity and belies the physical facts, under the circumstances of the case, to conclude that these two approaching vehicles were driven to the point of collision except each of the drivers was negligent."

The factual situations presented in *Suarez v. Katon,* 299 Mich. 38, and in other cases cited by plaintiff readily distinguish them from the situation in the present case. Plaintiff contends that he was confronted with a sudden emergency and, therefore, is not chargeable with contributory negligence as a matter of law. We agree with the following statement by the trial court:

"The essential thing is that plaintiff looked too late, and in so doing he helped to create an emergency because he did not look soon enough, and, as unfortunate as the results may have been, he may not now escape the consequences of his act in an emergency which he himself helped to create."

We conclude that plaintiff driver was guilty of contributory negligence as a matter of law. The judgment of the trial court is affirmed. Defendants shall recover costs.

CHANDLER, C. J., and BOYLES, NORTH, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.